Argued and submitted February 16, affirmed May 10, petition for review denied October 19, 2017 (362 Or 94)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANDREA DAWN ANDERSON,
*Defendant-Appellant.*

West Linn Municipal Court
M117504; A158956

396 P3d 984

Wayne Mackeson and Wayne Mackeson, PC, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Egan, Judge, and Lagesen, Judge.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants, ORS 813.010. Before trial, defendant moved to suppress statements she made during the course of the DUII investigation, as well as "derivative evidence" from those statements—results from urinalysis and Intoxilyzer tests, and observations of the field sobriety tests (FSTs) administered in the field and similar tests conducted at the jail. At the beginning of the traffic stop, she handed the officer a preprinted card stating, "The Holder Of This Card Invokes Their Right to Remain Silent. They Will NOT Make Any Statements Without First Consulting an Attorney." Also, after consenting to perform FSTs, she twice asked if she could call her attorney, to which the officer responded that she was not under arrest and would have a chance to talk to an attorney in the event that she was under arrest.

Defendant argues that, once she handed the officer the preprinted card, she had invoked her rights to counsel and against self-incrimination under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution, and, therefore, the investigating officer was required to refrain from questioning her; she contends that doing otherwise violated her right to not answer questions posed to her. Alternatively, she argues that she was in custody or compelling circumstances when she handed the officer the card or at least as of the time she asked to call an attorney. We reject defendant's argument that she was in custody or compelling circumstances without published discussion, writing only to address whether the officer's questioning of defendant, after she handed him the card invoking her rights, violated her constitutional rights.[1] We conclude that, under two Supreme Court

---

[1] Although Article I, section 12, confers protections independently of protections set out in the federal constitution, Oregon courts generally consider Article I, section 12, and the Fifth Amendment together when construing the right against self-incrimination, unless a defendant articulates an argument that the two constitutions provide different protections. *State v. Scott*, 343 Or 195, 203, 166 P3d 528 (2007). Here, to the extent defendant makes a separate Fifth Amendment argument by relying on *Salinas v. Texas*, ___ US ___, 133 S Ct 2174, 186 L Ed 2d 376 (2013), we conclude that that case is inapposite. In *Salinas*, the defendant challenged the admissibility of the defendant's silence during a portion of

decisions, *State v. Davis*, 350 Or 440, 256 P3d 1075 (2011), and *State v. Turnidge (S059155)*, 359 Or 364, 374 P3d 853 (2016), the officer's questioning did not.

In *Davis*, the court explained that it has "never held that an individual's invocation of a right to remain silent in the absence of custody or other compelling circumstances precludes police from attempting to obtain incriminating information from that individual." 350 Or at 459. In that case, the court concluded that the defendant's self-incriminating statements were not obtained in violation of Article I, section 12, despite the defendant having invoked his right to remain silent several months before police investigated allegations of sexual abuse. *Id.* at 460-61. In *Turnidge*, a case in which the defendant may have invoked his right to counsel (the court did not decide whether he had) during an investigation, the court stated that, if the circumstances of an investigation are not compelling, "such that the derivative right to counsel under Article I, section 12, did not attach, [the officers] were entitled to continue to ask defendant possibly incriminating questions, as long as they did not do so in a way that rendered his responses involuntary." 359 Or at 401. Together, those cases instruct that, in the noncompelling circumstances of this case, officers were permitted to question defendant even after her invocation of her constitutional right against self-incrimination and her right to counsel, and that such questioning did not render her statements involuntary. Accordingly, the trial court did not err in denying her motion to suppress.

Affirmed.

---

a noncustodial interview. *Id.* at 2178. The United States Supreme Court did not reach the question of whether the defendant's silence was admissible because the defendant had not invoked his Fifth Amendment privilege against self-incrimination. *Id.* at 2180; *see State v. Schiller-Munneman*, 359 Or 808, 812 n 1, 377 P3d 554 (2016) (discussing *Salinas*). Here, defendant poses a different question than the one raised in *Salinas*: Did the conduct of the investigating officer violate her right against self-incrimination because she had invoked that right prior to the officer's questioning of her?